HATTIE M. MOORE v. WILBUR W. SMITH, AND GEORGE
W. DILLENBACK, ADMINISTRATOR OF THE ESTATE
OF GEORGE I. MOORE, DECEASED.

[See 95 Mich. 71.]

*Mortgage foreclosure—Assignment of decree—Set-off—Redemption—
Evidence.*

1. Before the assignee of a foreclosure decree can proceed to a
sale of the mortgaged premises, he must present a petition to
the court setting forth the assignment, and ask for a sale
under the decree, and a sale made without such a petition is
void; citing *Webster v. Hitchcock*, 11 Mich. 56; *Perkins v.
Perkins*, 16 Id. 162; *Terry v. McClintock*, 41 Id. 492.[1]

2. A husband, after separating from his wife, assigned a fore-
closure decree covering her land, which he had purchased
before their marriage under an agreement with her to hold it
until, by the sale of the land, she could repay him the money
paid for the decree. The assignee paid no consideration for
the assignment. And it is held that he took it subject to the
wife's equities.

3. Prior to her marriage, the wife had been employed by her
husband as a domestic. In a suit brought after his death for
an accounting, and to redeem from said decree and a sale
made by the assignee thereunder, she testified that, at the
time of the purchase of said decree, the decedent owed her
for her services a sum exceeding the amount of the decree.
And it is held that this fact, if true, would not prevent her
from setting off the value of her services against said decree.

4. The defendants contended that the purchase of the mortgaged
premises was made by the complainant in the interest of her
infant ward. And it is held that the relations between com-
plainant and her ward do not concern defendants; that the
deed of the land was made to the complainant, and the agree-
ment of the decedent to purchase the decree, and hold it, was
made with her personally, and not as guardian.

5. A portion of the complainant's testimony was taken before the

[1] For a simple mode of revivor in such a case, see Chancery Rule
No. 125, adopted March 9, 1893, found in 93 Mich.

death of her husband, and the remainder after his death. And it is held that, as there was no opportunity to take his testimony to explain the transactions testified to by her, her testimony should be carefully scrutinized, and her claim, if allowed, found to rest upon a solid foundation.

Appeal from Kent. (Adsit, J.) Argued October 12, 1894. Decided December 28, 1894.

Bill to set aside a foreclosure sale and for an' accounting. Defendants appeal. Decree modified. The facts are stated in the opinion, and in 95 Mich. 71.

*Maynard & Chase* (*E. A. Maher*, of counsel), for complainant.

*Sweet & Perkins*, for defendants.

GRANT, J. The object of the bill filed in this case is to set aside a foreclosure sale of the Fitch mortgage, which will be found referred to in *Moore v. Smith*, 95 Mich. 73. A general statement will also be there found of the relations between Mr. and Mrs. Moore and defendant Smith. The specific prayer in the bill is that an accounting may be had of the amount remaining unpaid on the decree, and of the indebtedness of Moore to the complainant on account of services rendered to him; that so much thereof as shall be found sufficient for that purpose may be set off against the amount found due on the decree, in satisfaction and discharge thereof; and that defendant Smith be decreed to release to her all claims upon the real estate described in the decree. Proofs were taken before a commissioner, and the court decreed that there was due the complainant for services, including interest, $3,072; that there was due on the Fitch decree $1,041.63, leaving a balance found to be due her of $2,030.37, and that it be so certified to the probate court, to be paid to her by the administrator; that defendant

Smith release all claims against the real estate. The off-set consists of a claim for services rendered as a domestic in Mr. Moore's family, and for peddling fruit, etc., for him. She testified that she was to have $2 a week while serving as a domestic, and $2 a day when peddling, and that her services covered the period from November 21, 1877, to January 14, 1889, when she was married to Mr. Moore. The court found that she rendered services as a domestic for 563 weeks, and as a peddler for 850 days. From the amount of these earnings the court deducted $296.56 for items appearing upon Moore's books, and held chargeable to her.

1. The foreclosure sale under the assigned decree was void. After the assignment, further proceedings could not be prosecuted in the name of the assignor. The assignee in such cases must present a petition to the court setting forth the assignment, and ask for a sale under the decree. *Webster v. Hitchcock,* 11 Mich. 56; *Perkins v. Perkins,* 16 Id. 162; *Terry v. McClintock,* 41 Id. 492. It follows that the complainant is entitled to redeem, and have the sale set aside.

2. The assignment by Moore to Smith was without con-sideration. His own testimony is that he gave Mr. Moore his note for $100, which was afterwards returned to him by Moore, and nothing whatever was paid. The assign-ment, therefore, is subject to all the equities which existed between Mr. and Mrs. Moore.[1]

---

[1] After the making of the decree, the complainant became the owner of the mortgaged premises. The decedent took an assign-ment of the decree to himself, and agreed to hold it until com-plainant could dispose of the land, when she was to repay him the money he had paid for the decree. Complainant married the decedent, and, after he had separated from her, he assigned the decree to the defendant Smith, with whom he was then living, and who paid no consideration therefor, and Smith caused the land to be sold under the decree. One of the objects of this suit is to set aside said sale.

3. It is contended that complainant is not entitled to set off the value of her services against the decree, and that, if she had that right, the finding of the court as to the amount of such set-off is not sustained by the evidence. Mrs. Moore testified:

"Mr. Moore told me that he would pay off the Fitch mortgage and hold the place for me. * * * He said that if the property came up any, and I wanted to sell it, I should only pay what he had expended. I only paid him one year's interest."

It is argued by counsel for defendants that, according to her own testimony, Mr. Moore was indebted to her for services at the time of the assignment in at least $1,000, and that therefore an agreement is to be inferred that she was liable to pay him the amount of the decree absolutely, without any set-off. We do not think such an agreement can be implied from the mere fact that he was indebted to her. It is also argued that the purchase of the land covered by the mortgage was in the interest of the complainant's ward, Mrs. Baxter. The relations between complainant and her ward do not concern defendants. The deed was made to her, and the agreement of Moore to purchase the decree, and hold it for her, was with her personally, and not as a guardian.

4. The only remaining question is, has complainant maintained her claim for services? The bill in this case was filed June 10, 1891. The deposition of complainant was begun October 29, 1891, but was not concluded until after Mr. Moore's death, in November following. There was therefore no opportunity to take his deposition to explain the transactions between them. Her testimony, therefore, should be carefully scrutinized, and her claim found to rest upon a solid foundation. The Fitch decree was assigned to Moore April 21, 1881, at which time her alleged agreement with Moore was made. According to

her testimony, he was then indebted to her in a sum considerably in excess of the amount due upon the decree. He was a man of means, and fully able to pay, yet she does not claim that she asked him for any payment, nor show any reason why he did not pay her. She also testified that Mr. Moore never paid her any money for her services, but, on the contrary, that she expended her own money in furnishing the house and in buying clothing for him. The story is inconsistent with her own financial condition. Although she had no memorandum, she gave the exact number of days she worked peddling each year. The improbability of her statement appears from her testimony in regard to this work for the year 1880, in which she spent 78 days in selling between 80 and 90 bushels of fruit. When she went to work for Mr. Moore she had a child a few weeks old, she being then married. This child was supported by Mr. Moore during the entire time. Her story seems to us improbable. That Mr. Moore advanced her money to carry on certain litigation in which she was engaged, that he expended money upon the Fitch land for her, and that he paid her other sums, is fairly established by the evidence. January 22, 1891, she filed a petition in the foreclosure suit of *Fitch v. Baxter,* setting up this arrangement with Mr. Moore, and the assignment to Smith and sale to him, asking to have the sale set aside, and alleging that she was prepared to pay the principal and interest on the decree according to her agreement with Mr. Moore. In this petition she says nothing whatever about any claim for services. Between four and five months later she brings a suit at law against Mr. Moore, based upon these alleged services, which suit is still pending. Whatever the arrangement between them may have been in relation to her services, we feel satisfied that she has been amply compensated.

The decree will be reversed, and a decree entered in

this Court setting aside the foreclosure sale, which will give her ample opportunity to ' redeem before defendant Smith will be entitled to a sale under the proper proceedings to enforce his decree. The defendants will recover the costs of this Court.

The other Justices concurred.